FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 26, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KACHESS COMMUNITY ASSOCIATION, a Washington nonprofit corporation; and WISE USE MOVEMENT, a Washington nonprofit corporation, | NO:  1:19-CV-3155-RMP |
| Plaintiffs, | ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS |
| v. | |
| US DEPARTMENT OF INTERIOR, Bureau of Reclamation; WASHINGTON STATE DEPARTMENT OF ECOLOGY; BRENDA BURMAN, Commissioner; and MAIA BELLON, Director; and ROZA IRRIGATION DISTRICT, Intervenor Defendant, | |
| Defendants. | |

BEFORE THE COURT are Motions to Dismiss from: (1) the Washington

State Department of Ecology ("Ecology") and its former Director Maia Bellon

(collectively, the "State Defendants") ECF No. 22; (2) Intervenor Roza Irrigation

District's ("Roza") ECF No. 23; and (3) the United States Department of the

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ~ 1

Interior, Bureau of Reclamation ("Reclamation") and its Commissioner Brenda

Burman (collectively, the "Federal Defendants") ECF No. 25.  Having reviewed the

Complaint, ECF No. 1; the parties' submissions related to the Motions to Dismiss;

the *amici curiae* brief of Yakima Basin Joint Board and Trout Unlimited, ECF No.

30; the remaining record; and the relevant law, the Court is fully informed.

## BACKGROUND

The Court recites the following factual context from the Complaint and

materials referenced in the Complaint.[1]

Plaintiff Kachess Community Association is comprised of approximately 167

owners of property adjacent to the Lake Kachess Reservoir.  ECF No. 1 at 5.

Plaintiff Wise Use Movement is a conservation nonprofit.  *Id.*

In 1905, Congress authorized the development of irrigation facilities in the

Yakima River basin in Washington State through the Yakima Project.  ECF No. 23-

---

[1] On a motion to dismiss, a district court may "consider materials incorporated into
the complaint or matters of public record."  *Coto Settlement v. Eisenberg*, 593 F.3d
1031, 1038 (9th Cir. 2010).  The Court notes that Plaintiffs ask the Court to strike
an exhibit submitted by Intervenor Roza in support of its Motion to Dismiss on the
basis that the Complaint did not refer to the document, or, in the alternative, asks
the Court to convert Intervenor's Motion to Dismiss into a Motion for Summary
Judgment to allow Plaintiffs an opportunity to fully respond to the exhibit.  ECF
Nos. 32 at 32 (Plaintiffs' Response); 23-5 (October 31, 2018 Memorandum
submitted by Intervenor).  The Court denies as moot Plaintiffs' request on the basis
that the Court did not consider the exhibit in rendering its decision.

2 at 46.  In approximately the first fifty years of the Yakima Project, Reclamation constructed several river diversions, in the form of canals and dams, that formed five large reservoirs: Lake Keechelus, Lake Kachess, Lake Cle Elum, Bumping Lake, and Rimrock Lake.  *Id.*; *see also* ECF No. 23-2 at 46.

Reclamation manages the Yakima Project to supply water for irrigation and for flood control, power generation, and instream flow for fish, wildlife, and recreation.  ECF No. 23-2 at 50.  Reclamation annually estimates the total water supply available and allocates the water among users based on the priority of their water rights.  *Id.* at 51.  Non-proratable water rights holders, generally those whose water rights pre-date the Yakima Project, receive their full water supply before junior and proratable rights holders.  ECF No. 23-3 at 19.

### Integrated Plan

Beginning in approximately 2009, federal, state, and local agencies, the Confederated Tribes and Bands of the Yakama Nation, Intervenor Roza, and other stakeholders convened as a workgroup that developed the Yakima Basin Integrated Water Resource Management Plan ("Integrated Plan"), which purports to embody a "comprehensive approach to water resources and ecosystem restoration improvements in the Yakima River basin."  ECF No. 25-1 at 7; *see also* ECF No. 23-2 at 67; 1 at 18.  Plaintiffs allege that this workgroup, the Yakima River Basin Water Enhancement Project Workgroup ("Yakima Workgroup"), "was not created nor chartered under the FACA" when it formed in 2009.  ECF No. 1 at 17.  Plaintiffs

1    further allege that "residents around Keechelus, Kachess, Cle Elum and Bumping

2    Lakes were excluded by Defendants from the Yakima Workgroup."  *Id.* at 18.

3         The Final Programmatic Environmental Impact Statement ("FPEIS") for the

4    Integrated Plan was issued on March 2, 2012.  ECF No. 25-1.  The FPEIS analyzed

5    both the Integrated Plan and the alternative of "no action."  *Id.*; 1 at 19.  The FPEIS

6    described the Integrated Plan as "intended to meet the need to restore ecological

7    functions in the Yakima River system and to provide more reliable and sustainable

8    water resources for the health of the riverine environment and for agriculture and

9    municipal and domestic needs."  ECF No. 23-2 at 9.  In addition, "the Integrated

10   Plan is . . . intended to provide the flexibility and adaptability to address potential

11   climate changes and other factors that may affect the basin's water resources in the

12   future."  *Id.*

13        Plaintiffs allege that the "Yakima Workgroup adopted the 2012 Yakima Plan"

14   and shifted to "implementation mode" after the FPEIS was issued.  ECF No. 1 at 18.

15   This shift allegedly was manifested by formation of an "Implementation

16   Committee," headed by Ecology and including Roza and the Washington

17   Department of Fish and Wildlife, whose "function is largely to lobby elected

18   officials" and whose meetings allegedly were "closed to the public even though two

19   state agencies are members paid for with taxpayer money."  *Id.*

20        Kachess Community Association's members submitted comments on the

21   FPEIS.  ECF No. 1 at 6.  Plaintiffs allege that, within a month after the FPEIS was

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ~ 4

issued, "fifteen local, state and national organizations wrote to Defendants with FPEIS objections," but Plaintiffs did not receive a response.  ECF No. 1 at 19.

Reclamation issued a Record of Decision ("ROD") on July 9, 2013, which selected the Integrated Plan as identified in the FPEIS to provide the framework for Reclamation to work with Ecology and other federal state, local, and tribal partners to manage the water resources in the Yakima River basin.  ECF Nos. 1 at 10; 25-2 at 5.

The Integrated Plan consists of seven elements: (1) reservoir fish passage; (2) structural and operational changes to existing facilities; (3) surface water storage; (4) groundwater storage; (5) habitat/watershed protection and enhancement; (6) enhanced water conservation; and (7) water market reallocation.  ECF No. 25-2 at 5−6.

On March 12, 2019, Congress enacted Pub. L. No. 116-9, Sections 8201-8204, of the John Dingell Jr. Conservation, Management, and Recreation Act, Title VIII, Subtitle C, YRBWEP Phase III (the "Dingell Act"), requiring Reclamation to use the Integrated Plan to identify and implement site-specific projects. 133 Stat. 580, 810−21 (2019).

The surface water storage component of the Integrated Plan involves four site-specific projects: (1) the Wymer Dam and Pump Station; (2) the Kachess Reservoir Inactive Storage; (3) the Bumping Lake Reservoir Enlargement; and (4) a study of Columbia River pump exchange with Yakima Storage.  ECF No. 1 at 10; 23-2 at

9−10.  Plaintiffs allege that the fourth project, the Columbia River pump exchange, is "conditioned upon later failure" of the first three projects and represents " political acceptance of the Yakima Plan by the Yakima Workgroup . . . ."  ECF No. 1 at 10.

Each site-specific project must undergo its own environmental review under the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 et seq., and the State Environmental Policy Act ("SEPA"), chapter 43.21C of the Revised Code of Washington ("RCW"), before it can be approved and implemented by Reclamation and Ecology.  *See* ECF No. 1 at 11, 19 ("The course of action proposed by this 'programmatic' EIS is to leave precise actions related to the Yakima Plan within the selected 'combination' to be considered in later environmental compliance.").

Plaintiffs allege that the FPEIS is inadequate because it does not include an adequate range of alternatives and, consequently, "the subsequent tiered project-specific EISs that rely on it are fatally flawed."  ECF No. 32 at 2.  According to the Complaint, "[b]y focusing on a single action alternative comprised of distinct components, the PEIS eliminates possible future alternatives from later environmental review and consideration and instead 'snowballs' the Yakima Plan by foreclosing other, viable alternatives such as aggressive water conservation, water efficiencies, and water banking all of which have been proven to be effective tools to conserve and manage water."  ECF No. 1 at 11.

/ / /

/ / /

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ~ 6

*Pumping Plant*

One tiered project that Reclamation and Ecology proposed in order to effectuate the goals of the Integrated Plan involved construction of the Kachess Drought Relief Pumping Plant ("KDRPP") and the Keechelus-to-Kachess Conveyance ("KKC").  Reclamation and Ecology released the Draft Environmental Impact Statement ("DEIS") for these projects in January 2015, which analyzed environmental impact of the no action approach alongside five action alternatives. ECF No. 23-3 at 5.  The KDRPP would deliver up to an additional 200,000 acre-feet of water from the inactive storage, meaning water below the current outlet channel, in Lake Kachess Reservoir during times of drought.  *Id.* at 7.

Plaintiffs allege in the Complaint that the 2015 DEIS is flawed because it is unclear and ambiguous in several respects; it inadequately disclosed and analyzed appropriate alternatives; and it did not adequately address threatened and endangered species.  ECF No. 1 at 19−20.

After the public comment period, Reclamation and Ecology "reviewed all comments on the DEIS, developed a new floating pumping plant alternative, collected additional scientific data as necessary, and evaluated new findings" and documented those findings in a Supplemental Draft Environmental Impact Statement ("SDEIS") released to the public on April 13, 2018.  ECF No. 1 at 20. Plaintiffs allege that the SDEIS is flawed in that it is "extremely long," confusing, and did not disclose the need for publishing the SDEIS.  *Id.* at 21.

Reclamation and Ecology issued a final Tier-1 EIS in March 2019 ("Tier-1 EIS"). ECF No. 1 at 22. In April 2019, Reclamation issued a ROD (the "Tier-1 ROD"), determining that "the remaining alternatives in the Tier-1 EIS, including the KKC, will not be carried forward into the Tier-2 EIS." ECF No. 25-4 at 4. Therefore, the Tier-1 ROD determined that only the KDRPP is appropriate for further site-specific analysis in a future Tier-2 EIS. ECF No. 1 at 23.

In their Complaint, Plaintiffs seek a declaration from the Court that:

- the FPEIS and the 2013 ROD violate the procedural and substantive requirements of NEPA and SEPA;
- the Kachess DEIS, Kachess SEIS, the Tier-1 EIS and the Tier-1 ROD violate the procedural and substantive requirements of NEPA and SEPA;
- Defendants acted arbitrarily and capriciously in concluding the environmental documents (i.e., EISs and RODs) satisfy the procedural and substantive requirements of NEPA and SEPA;
- The FPEIS, 2013 ROD, Kachess DEIS, Kachess SEIS and the Tier-1 EIS and Tier-1 ROD are inadequate under the rule of reason;
- Any and all decisions and actions based on the FPEIS, 2013 ROD, Kachess DEIS, Kachess SDEIS, and the Tier-1 EIS and Tier-1 ROD are null and void;
- Defendants violated the Endangered Species Act ("ESA"), 16 U.S.C. § 1531 *et seq.*;
- Defendants violated the Federal Advisory Committee Act ("FACA"), 5 U.S.C. app. 1, § 1 *et seq.*;
- Defendants violated the state Open Public Meetings Act ("OPMA").

ECF No. 1 at 31.  Plaintiffs also seek injunctive relief prohibiting Defendants from further pursuing the Integrated Plan and the KDRPP.  *See* ECF No. 1 at 4, 32.

## RULE 12(b) STANDARDS

### Fed. R. Civ. P. 12(b)(1)

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'"  *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994)).  A court will dismiss a complaint under Fed. R. Civ. P. 12(b)(1) upon finding that the court lacks jurisdiction over the subject matter of the suit.  Standing is an essential aspect of the constitutional limitation that federal-court jurisdiction extends only to actual cases or controversies.  *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 37 (1976).

"The party invoking federal jurisdiction bears the burden of establishing standing."  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (internal quotation omitted).  Further, when facing a motion to dismiss under Rule 12(b)(1), a plaintiff "must clearly . . . allege facts demonstrating each element."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (internal quotation omitted).  Courts must presume that they "lack jurisdiction unless the contrary appears affirmatively from the record."  *Renne v. Geary*, 501 U.S. 312, 315 (1991).  However, a court also presumes that the plaintiff's allegations in the complaint are true and construes the

1  complaint in favor of plaintiff. *See Levine v. Vilsack*, 587 F.3d 986, 991 (9th Cir.

2  2009).

3  ### Fed. R. Civ. P. 12(b)(6)

4  To survive a motion to dismiss for failure to state a claim upon which relief

5  can be granted under Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient

6  factual matter, accepted as true, to 'state a claim to relief that is plausible on its

7  face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

8  *Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when the plaintiff pleads

9  "factual content that allows the court to draw the reasonable inference that the

10  defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "In sum, for

11  a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and

12  reasonable inferences from that content, must be plausibly suggestive of a claim

13  entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962,

14  969 (9th Cir. 2009).

15  In deciding a Rule 12(b)(6) motion to dismiss, as with a Rule 12(b)(1) motion,

16  a court "accept[s] factual allegations in the complaint as true and construe[s] the

17  pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul*

18  *Fire & Marin Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, a court need

19  not "assume the truth of legal conclusions merely because they are cast in the form

20  of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per

21  curiam) (internal quotation omitted).

# DISCUSSION

## *State Claims*

The State Defendants assert that Plaintiffs' state law claims, under the SEPA and the OPMA, are barred from proceeding in federal court under the Eleventh Amendment of the United States Constitution.  ECF No. 24 at 2.[2]

Plaintiffs respond that their state law claims may proceed in federal court because they seek injunctive, not monetary, relief and because Plaintiffs' federal and state claims derive from a common nucleus of operative fact that "must be tried in one judicial proceeding." ECF No. 32 at 23.

Courts may exercise supplemental jurisdiction over state law claims "in any civil action of which the district courts have original jurisdiction" and the state law claims "are so related to claims within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).  However, the Eleventh Amendment provides that a state is immune from suit unless it has waived its immunity or Congress has abrogated its immunity through legislation.  *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011).  This grant of immunity encompasses state agencies.  *P. R. Aqueduct & Sewer Auth. v. Metcalf*, 506 U.S. 139, 144 (1993).  "A state's waiver of

---

[2] The State Defendants' Motion to Dismiss is filed at ECF No. 22, but their brief is filed at ECF No. 24 as a Praecipe.

Eleventh Amendment immunity and consent to suit must be 'unequivocally expressed.'" *Doe v. Regents of the Univ. of Cal.*, 891 F.3d 1147, 1152−53 (9th Cir. 2018) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984)).

Under the *Ex Parte Young* exception to Eleventh Amendment immunity, a party may seek prospective injunctive relief against an individual state officer in her official capacity. *Doe*, 891 F.3d at 1153 (citing *Agua Caliente Band of Cahuilla Indians v. Hardin*, 223 F.3d 1041, 1045 (9th Cir. 2000));. However, "the *Young* exception does not apply when a suit seeks relief under state law, even if the plaintiff names an individual state official rather than a state instrumentality as the defendant." *Id.* (citing *Pennhurst*, 465 U.S. at 117).

As set forth above, Plaintiffs seek a declaratory judgment against the State Defendants as well as injunctive relief for alleged violations of both state and federal law, specifically NEPA, SEPA, OPMA, and FACA. ECF No. 1 at 31−32. The State Defendants do not dispute that Plaintiffs can pursue federal claims for prospective relief against the Director of Ecology, to the extent that those federal claims are not dismissed for other reasons. ECF No. 34 at 6; *see Ex Parte Young*, 209 U.S. 123 (1908). With respect to Plaintiffs' state law claims, however, the State Defendants argue that Plaintiffs do not offer authority to support their argument that there can be pendent jurisdiction simply because the claims seek prospective injunctive relief and

share a common nucleus of fact with the federal claims when the State Defendants

are raising the shield of sovereign immunity.  ECF No. 34 at 6.

Plaintiffs do not purport to offer any evidence of waiver.  *See* ECF No. 32 at

23−26.  Rather, Plaintiffs argue that this Court should reject Eleventh Amendment

immunity because Ecology, as "co-lead agency," is an "indispensable party

necessary for this Court to render relief."  *Id.* at 25.  This argument does not suffice

to clear the high hurdle set by the Eleventh Amendment, and the *Young* exception

does not apply to Plaintiffs' state law claims.  The State Defendants are immune

from state law claims pursuant to the Eleventh Amendment.  Accordingly, the State

Defendants' motion to dismiss the SEPA and OPMA claims is granted.

### *Federal Claims*

#### NEPA Claims

Plaintiffs claim NEPA violations based on the Integrated Plan and the

Kachess Pumping Plant.  Plaintiffs assert, specifically, that Defendants' FPEIS

violates NEPA, and SEPA, by:

> a.     Failing to identify, disclose and analyze reasonable alternatives
> in the EISs;
> b.     Evaluating only one action alternative—the Yakima Plan—and
> the no-action alternative in the FPEIS, thereby foreclosing the possible
> selection of other reasonable and feasible alternatives;
> c.     By pushing off project-specific environmental review and
> disclosure until after political decisions had been made and the
> Preferred Alternative had impermissibly 'snow-balled' and gained
> unstoppable momentum as evidenced by the alternatives evaluated in
> the EISs;

d.    By failing to identify, disclose and analyze potential, feasible mitigation measures in the EISs that could reduce the adverse impacts from the Yakima Plan; and

e.    By failing to properly consider and respond to public comments in the EISs.

ECF No. 1 at 25−26.

NEPA does not provide an independent cause of action.  *ONRC Action v. Bureau of Land Mgmt.*, 150 F.3d 1132, 1135 (9th Cir. 1998).  Rather, Courts review claims alleging NEPA violations under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.  *Id.*  Courts must decide whether the defendant agency "has considered all relevant factors and has explained its decision." *Earth Island Inst. v. United States Forest Serv.*, 442 F.3d 1147, 1162 (9th Cir. 2006).

Before reaching the substance of Plaintiffs' NEPA claims, the Court must resolve the threshold jurisdictional issues raised by the Federal Defendants and Intervenor Roza.  First, Defendants and Intervenor dispute that Plaintiffs may challenge Reclamation's selection of the Integrated Plan after enactment of the Dingell Act.  Second, Defendants dispute on standing and ripeness grounds whether this Court has jurisdiction over Plaintiffs' challenges to the KDRPP.

*Dingell Act*

"Agency decisions that allegedly violated . . . NEPA are reviewed under the APA."  *Alliance for the Wild Rockies v. U.S. Forest Service*, 907 F.3d 1105, 1112 (9th Cir. 2018).  The APA forecloses judicial review of agency action to the extent

that "statutes preclude judicial review" or "agency action is committed to agency discretion by law."  5 U.S.C. § 701(a).

The Federal Defendants and Intervenor Roza assert that this Court lacks subject matter jurisdiction over Plaintiffs' NEPA claims regarding the Integrated Plan because Congress enacted the Dingell Act, which mandates implementation of the Integrated Plan as a programmatic framework.  ECF Nos. 23 at 27−28; 25 at 10−11.  Therefore, Federal Defendants argue that they have no discretion that could be challenged under the APA. Plaintiffs respond that the notion that an authorization act such as the Dingell Act would overcome the protections of NEPA is "absurd" and "contrary to what the Dingell Act actually provides."  ECF No. 32 at 8.  Plaintiffs contend that, instead, the Dingell Act mandates that all actions with respect to the Integrated Plan comply with NEPA.  *Id.* at 8−9.

The Dingell Act provides that Reclamation, in coordination with Washington State and the Yakama Nation "shall identify and implement projects under the Integrated Plan that are prepared to be commenced during the 10-year period beginning on the date of this Act."  Pub. L. 116-9 § 8201.  The Dingell Act further requires that the "projects and activities identified by [Reclamation] for implementation under the Integrated Plan shall be carried out . . . in accordance with applicable laws, including" NEPA and the ESA.  *Id.*

By the plain language of the Dingell Act, the Court finds that the Federal Defendants are correct in their assertion that Congress has "removed Reclamation's

discretion to implement the Integrated Plan, thus precluding a NEPA challenge to the Integrated Plan programmatic EIS."  ECF No. 35 at 4−5; *see Pit River Tribe v. U.S. Forest Service*, 469 F.3d 768, 780−81 (9th Cir. 2006) ("NEPA's EIS requirements apply only to discretionary federal decisions.").  Moreover, "environmental review is contemplated for the individual projects that make up the Integrated Plan, not for the Integrated Plan as a whole."  ECF No. 35 at 4.  Plaintiffs have not shown that this Court may exercise judicial review under the APA. Therefore, the Court grants the Federal Defendants' and Intervenor Roza's Motions to Dismiss with respect to Plaintiffs' NEPA challenge to the Integrated Planon the basis of lack of jurisdiction.

<em>Standing and Ripeness</em>

Article III, section 2 of the Constitution extends the power of the federal courts to only "Cases" and "Controversies."  U.S. Const., Art. III, sect. 2.  "Those two words confine 'the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process.'"  *Massachusetts v. EPA*, 549 U.S. 497, 516 (2007) (quoting *Flast v. Cohen*, 392 U.S. 83, 95 (1968)).

To establish standing to sue under Article III, "a plaintiff must demonstrate 'that it has suffered a concrete and particularized injury that is either actual or imminent, that the injury is fairly traceable to the defendant, and that it is likely that a favorable decision will redress that injury.'"  *Washington v. Trump*, 847 F.3d 1151,

1159 (9th Cir. 2017) (quoting *Massachusetts*, 549 U.S. at 517)).  While an injury

sufficient for constitutional standing must be concrete and particularized rather than

conjectural or hypothetical, "an allegation of future injury may suffice if the

threatened injury is certainly impending, or there is a substantial risk that the harm

will occur." *Susan B. Anthony List*, 573 U.S. at 158 (internal quotations omitted).

"While standing is primarily concerned with who is a proper party to litigate a

particular matter, ripeness addresses when litigation may occur." *Lee v. Oregon*,

107 F.3d 1382, 1387 (9th Cir. 1997).  "[I]n many cases, ripeness coincides squarely

with standing's injury in fact prong." *Thomas v. Anchorage Equal Rights Comm'n*,

220 F.3d 1134, 1138 (9th Cir. 2000) (en banc).  "A claim is not ripe for adjudication

if it rests upon 'contingent future events that may not occur as anticipated, or indeed

may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting

*Thomas v. Union Carbide Agric. Products Co.*, 473 U.S. 568, 581 (1985) (internal

quotations omitted)).  If a claim is not ripe for adjudication, the Court lacks subject

matter jurisdiction, and the claim must be dismissed.  *Southern Pacific Transp. Co.

v. City of Los Angeles*, 922 F.2d 498, 502 (9th Cir. 1990), *cert. denied*, 502 U.S. 943

(1991); *see also* Fed. R. Civ. P. 12(h)(3) (requiring court to dismiss an action if, at

any point in the proceedings, the court determines it lacks subject matter

jurisdiction).

"Determining whether [an action] is ripe for judicial review requires [the

Court] to evaluate (1) the fitness of the issues for judicial decision and (2) the

1  hardship to the parties of withholding court consideration." *Nat'l Park Hospitality*

2  *Ass'n v. DOI*, 538 U.S. 803, 808 (2003).  In the context of judicial review under the

3  APA, agency conduct is ripe for review only after final agency action.  5 U.S.C. §

4  704.

5       The Federal Defendants argue that Plaintiffs' NEPA claims regarding the

6  KDRPP are not ripe because the Tier-1 EIS and the Tier-1 ROD are not final agency

7  actions, and, therefore, these claims will not be ripe until the Tier-2 EIS is complete.

8  *See* ECF No. 35 at 2 ("opportunity to challenge final agency actions will arise at a

9  later stage of the project when and if a pumping plant is authorized").  The Federal

10  Defendants maintain that Plaintiffs' claim is analogous to the project challenged in

11  *Rapid Transit Advocates, Inc. v. S. Cal. Rapid Transit Dist.*, 752 F.2d 373 (9th Cir.

12  1985), because it involves "tiered environmental review for a site-specific project,

13  rather than a programmatic challenge like those at issue in the cases Plaintiffs cite."

14  ECF No. 35 at 7.  The Federal Defendants advocate an outcome consistent with

15  *Rapid Transit Advocates*, in which the Ninth Circuit held that the plaintiffs' NEPA

16  claim would not ripen until the second tier of the project was complete because, until

17  that time, the agency had not committed to funding construction and the plaintiffs

18  would not be affected until the decision was made.  ECF No. 35 at 7; *Rapid Transit*

19  *Advocates*, 752 F.2d at 378−79.

20       Roza, in addition to arguing that Plaintiffs' claims regarding the KDRPP

21  DEIS, SDEIS, and Tier-1 EIS are unripe, argues that Plaintiffs do not allege

sufficient injury to support standing to challenge the Tier-1 EIS.  ECF No. 23 at 32.

Roza argues that Plaintiffs allege injuries in the form of "visual blight from the

lowered level of Lake Kachess Reservoir, destruction of private and/or community

water wells, impairment of critical wildlife habitat used and enjoyed by Plaintiffs,

and diminishment of Plaintiffs' property values." *Id.*  However, Roza continues,

these alleged injuries "would only occur in the event that Reclamation authorizes the

KDRPP," and "neither the Integrated Plan, the 2013 ROD, nor the 2019 ROD

commit Reclamation to undertaking any site-specific action."  *Id.*

Plaintiffs respond that the FPEIS, the 2013 ROD and the 2019 Tier-1 EIS "all

. . . form the basis for [Reclamation's] and DOE's long-evolving Yakima Plan,

which, as alleged in the Complaint, pre-determined the future outcome by failing to

disclose and analyze viable alternatives and thus represents a concrete injury

justiciable now."  ECF No. 32 at 13.

"[E]nvironmental plaintiffs adequately allege injury in fact when they aver

that they use the affected area and are persons 'for whom the aesthetic and

recreational values of the area will be lessened' by the challenged activity." *Friends

of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 183 (2000) (quoting

*Sierra Club v. Morton*, 405 U.S. 727, 735 (1972)).  "Once a plaintiff has established

an injury in fact under NEPA, the causation and redressability requirements are

relaxed." *Cantrell v. City of Long Beach*, 241 F.3d 674, 682 (9th Cir. 2001).

The DEIS and SDEIS issued in this case were by their terms draft documents. ECF Nos. 23-5; 1 at 19−20.  While on first impression the Tier-1 ROD narrows the scope of future action with respect to the KDRPP, viewing Plaintiffs' allegations in the light most favorable to Plaintiffs, there is nothing finalized, such as any decision authorizing construction or even selecting a design.  *See* ECF No. 25-4 at 167.  "A claim is not ripe for adjudication if it rests upon contingent future events that many not occur as anticipated, or indeed may not occur at all."  *Texas*, 523 U.S. at 300.  In this case, there is nothing settled, and all of the alleged injuries would be contingent on as-yet undetermined future decisions and events.  Because Plaintiffs are not able to adequately define any "certainly impending" activity by Defendants that likely will injure Plaintiffs' interests related to Lake Kachess Reservoir, the Court finds that Plaintiffs have not presented a sufficiently concrete injury for purposes of standing or ripeness.  *Susan B. Anthony List*, 573 U.S. at 158.  Without establishing standing and ripeness, Plaintiffs have failed to establish federal subject matter jurisdiction.  Therefore, the Court grants Federal Defendants' and Roza's Motions to Dismiss, on the basis of lack of jurisdiction, with respect to the remainder of Plaintiffs' NEPA claims.

<u>ESA Claim</u>

The Federal Defendants maintain that this Court lacks jurisdiction over Plaintiffs' ESA claims because Plaintiffs have not "complied with the sixty-day notice requirement or the administrative exhaustion process."  ECF No. 35 at 2.  The

Federal Defendants cite to Ninth Circuit caselaw demonstrating that "[t]he sixty-day notice requirement is jurisdictional." *Klamath-Siskiyou Wildlands Ctr. v. MacWhorter*, 797 F.3d 645, 647 (9th Cir. 2015). Plaintiffs do not maintain that they complied with this jurisdictional requirement. *See* ECF No. 32 at 35−36. Without Plaintiffs' having satisfied the sixty-day notice requirement, this Court does not have jurisdiction over the ESA claims. Therefore, as Plaintiffs have not demonstrated that there is a jurisdictional basis for their ESA claim to be before this Court, the Court grants the Federal Defendants' and Roza's Motions to Dismiss the ESA claim for lack of jurisdiction.

<u>FACA Claim</u>

Plaintiffs assert in their Complaint that all Defendants violated FACA through their participation in the Yakima Workgroup, which Plaintiffs argue amounted to an ad hoc advisory group that is impermissible under FACA. ECF No. 1 at 30.

The Federal Defendants seek dismissal of Plaintiffs' FACA claims on the assertion that the claims are time-barred and, therefore, fail to state a claim under Fed. R. Civ. P. 12(b)(6). ECF No. 35 at 8. The Federal Defendants argue that the relevant alleged final agency actions occurred outside of the six-year statute of limitations of FACA, when the Yakima Workgroup was formed in 2009 or when the Workgroup adopted the Integrated Plan in 2012. ECF No. 25 at 21.

Plaintiffs respond that their "FACA/APA claims are not time-barred because there has been no 'final agency action' since the Yakima Workgroup is ongoing and

still providing advice and recommendations to the Federal Defendants regarding the

Yakima Plan in violation of FACA and the APA." ECF No. 32 at 19. The Federal

Defendants reply that, alternatively, the lack of a final agency action, which

Plaintiffs themselves argue when they allege ongoing activity, defeats Plaintiffs'

FACA claim. ECF No. 35 at 8.

The FACA statute contains neither a private right of action nor a statute of

limitations. *See Judicial Watch v. United States DOC*, 736 F. Supp. 2d 24, 30

(D.D.C. 2010) ("Because the FACA does not explicitly confer a private remedy,

*see generally* 5 U.S.C. app. 2, and because this fact alone is 'determinative,' the

court holds that the FACA does not provide plaintiff with a private right of

action."). "The APA grants district courts jurisdiction to review final agency

actions for which there is no other remedy." *Id.* For the APA, courts apply the

general statute of limitations for civil actions against the federal government at 28

U.S.C. § 2401(a). *Wind River Mining Corp. v. United States*, 946 F.2d 710,

712−14 (9th Cir. 1991). That statute provides that "every civil action commenced

against the United States shall be barred unless the complaint is filed within six

years after the right of action first accrues." 28 U.S.C. § 2401(a). Under section

2401(a), a cause of action first accrues when the "person challenging the action can

institute and maintain a suit in court." *Trafalgar Capital Assoc. v. Cuomo*, 159

F.3d 21, 34 (1st Cir. 1998).

1    Plaintiffs argue that their FACA claims are not time-barred because there

2    has been no final agency action from which the statute of limitations must be tolled

3    "since the Yakima Workgroup is ongoing and still providing advice and

4    recommendations to the Federal Defendants regarding the Yakima Plan in

5    violation of FACA and the APA."  ECF No. 32 at 19.  First, this position ignores

6    that the allegations in the Complaint regarding the Workgroup relate to 2009 and

7    2012, as the Federal Defendants and Intervenor Roza maintain.  *See* ECF Nos. 1 at

8    17−18; 23 at 44−45; at 25 at 20−21.  Moreover, and more critically, Plaintiffs'

9    position reinforces why the Complaint that they filed is not viable.  If Plaintiffs'

10   FACA claim is timely because there has not yet been a final agency decision, then

11   Plaintiffs have not stated a claim upon which relief can be granted because it is

12   axiomatic that agency action must be final to be reviewable.  *See* 5 U.S.C. § 704.

13   Given that Section 704's finality requirement is jurisdictional, Plaintiffs

14   have not shown that this Court has jurisdiction to determine Plaintiffs' FACA

15   claim, because the FACA claim does not challenge a final agency action.  *See*

16   *Havasupai Tribe v. Provencio*, 876 F.3d 1242, 1248, n. 2 (9th Cir. 2017) ("Final

17   agency action is a jurisdictional requirement imposed by 5 U.S.C. § 704." (internal

18   quotation omitted).  Therefore, the Court concludes that it lacks jurisdiction over

19   Plaintiffs' FACA claim.   The Court grants the Federal Defendants' and Intervenor

20   Roza's Motions to Dismiss with respect to the FACA claim and dismisses the

21   FACA claim without prejudice for lack of jurisdiction.

**CONCLUSION**

The Court grants Defendants' Motions to Dismiss, ECF Nos. 22, 23, and 25, and dismisses jurisdiction without prejudice Plaintiffs' Complaint for lack of subject matter.  *See Southern Pacific Transportation Co.*, 922 F.2d at 502; Fed. R. Civ. P. 12(h)(3); *see also Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir.), *cert. denied sub nom. Missouri ex rel. Hawley v. Becerra*, 137 S. Ct. 2188 (2017) ("In general, dismissal for lack of subject matter jurisdiction is without prejudice.").  However, the Court does not grant leave to amend the complaint, as amendment would be futile in light of the ongoing nature of the administrative process.  *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 339 (9th Cir. 1996) (holding that denial of leave to amend is not an abuse of discretion when amendment is futile)*; Lak v. State Bar of Cal.*, No. SACV 18-2171-PSG (KK), 2019 U.S. Dist. LEXIS 29643, at *9 (C.D. Cal. Jan. 11, 2019) (dismissing without prejudice and without leave to amend where court found that it lacked subject matter jurisdiction).

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendants Washington State Department of Ecology and its former Director Maia Bellon's Motion to Dismiss State Law Claims, **ECF No. 22**, is **GRANTED**;

2. Intervenor Roza Irrigation District's Motion to Dismiss, **ECF No. 23**, is **GRANTED**;

3.  Defendants United States Department of the Interior, Bureau of Reclamation and its Commissioner Brenda Burman's Motion to Dismiss, **ECF No. 25**, is **GRANTED**.

4.  Plaintiffs' claims are **DISMISSED WITHOUT PREJUDICE**, without costs or fees for any party and **WITHOUT LEAVE TO AMEND**.  As these rulings dispose of the case, the District Court Clerk shall enter judgment of dismissal without prejudice.

5.  All upcoming hearings and deadlines in this matter are **vacated**, and all pending motions are **denied as moot**.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order, enter judgment of dismissal without prejudice as directed, provide copies to counsel, and **close the file** in this case.

**DATED** June 26, 2020.


*s/ Rosanna Malouf Peterson*
ROSANNA MALOUF PETERSON
United States District Judge